JOHN H. HERNDON AND OTHERS v. S. C. ROBERTSON'S ADM'RS.

In suits by Empresarios against the Republic, authorized by special Act of Congress, other persons, whose rights were involved, had a right to intervene, as in other cases, on general principles, without express permission in the Act.

In a suit by an Empresario against the Republic, under the Act of Congress, for premium lands, the question was not as to the validity of the titles extended to the plaintiff, for such lands, nor to determine whether they had been duly executed ; but as to the amount of land to which he was entitled for the families introduced by him under his contract ; and a decree of the Court, in such suit, that the plaintiff was entitled to a certain quantity of lands, to be selected by him from certain lands previously designated by him as his premium lands, precluded any third person from afterwards locating any land so selected, although the title of said plaintiff to the land may have been defective at the date of the decree.

Under the decree of this Court in the case of Sam Houston, President, v. The Administrator of S. C. Robertson, 3 Texas, 374, the administrator of said Robertson was bound to include among the lands selected by him in pursuance thereof, all the premium lands of said Robertson which had been alienated by him or by his administrator since his death.

Appeal from Travis. After the decree of the Supreme Court of April 8th, 1848, in the suit of the administrator of Empresario S. C. Robertson against Sam Houston, President,

Vol. XV.                 38

which will be found in 2 Texas, 35, and 3 Id. 374, John H. Herndon located a block of five leagues on the Brazos River, which was included in the list of premium lands claimed by Robertson's administrator in that suit. Herndon claimed the land by virtue of his locations, on the ground that no valid title had been extended to Robertson for the same, the first original or protocol, not being signed by the Commissioner, although there was a formal testimonio signed by the Commissioner. The ground of Mason's intervention appears in the opinion of the Court. Exceptions to the right of these parties to intervene were overruled. A jury was waived, and the Court below gave judgment against both the intervenors. There were other intervenors who did not appeal.

*Duval, Hamilton* and *Paschal*, for appellants.

*Sayles*, for appellee.

WHEELER, J. It is insisted for the appellee, that this being a suit originally between the appellee and the Government, under a statute which authorized the bringing of the suit for a specific purpose, " to settle the claims of Empresarios," (Dig. Art. 1821, 1863,) none other than those contemplated by the statute could become parties to the suit; and, consequently, that the appellants had no right to intervene, for the purpose of having an adjudication of their rights respecting the matter in litigation, as against the original plaintiff in this action. In this view, however, we do not concur. The right of the intervenors, to claim the protection of the Court against the action sought by the plaintiff, wherein it was proposed to adjudicate directly upon their title, did not depend upon the statute, but on general principles; which allow a party to intervene in such cases, for the purpose of protecting his rights, and avoiding the necessity of future litigation for the same cause. The

statute which permitted the plaintiff to institute suit against the Government, simply conferred a right which he would not otherwise have had; but it cannot be supposed that it was intended thereby to place him upon higher grounds as respected the rights of third persons, than other parties litigant occupy before the Courts. Because he was permitted to sue the Government, it did not, of course, follow that he could claim to have the rights of other persons adjudicated, and their titles annulled, without their having the common right to object to the action by which he sought to devest and annul their titles. If the action of the Court had been restricted to the mere ascertainment of the plaintiff's rights as against the Government, there would be reason for holding that, as none but the parties before the Court had any interest in the litigation, others could not interfere. But when it was proposed to go further, and act directly upon titles previously issued; and it was made to appear to the Court that the proposed action brought directly in question the rights of third persons, who presented themselves before the Court asking to be heard, upon the plainest principles of equity and justice they were entitled to be heard, before a judgment was rendered which might seriously impair, if it did not finally determine their rights. There was nothing in the nature of the suit, or the right conferred upon the plaintiff by the statute, which precluded the intervenors from claiming protection for their titles. If not permitted to be heard in this suit, they would inevitably be compelled to litigate their rights with the plaintiff, in another. He had no more right to drive them to that alternative in this, than he would have in any other suit; nor had he the right in this suit more than in any other, to demand that the doors of justice should be closed against them, while they were open to him, and he asked a decree, which must necessarily cast doubts and clouds over their title. We therefore think the Court very properly entertained the petitions of the intervenors. Whether the Court adjudged rightly upon the merits of their

respective cases is a different question. And that is the question which remains to be determined.

It is to be observed that the only parties before the Court, and entitled to be heard, upon this appeal, to complain of the judgment, are the intervenors Herndon and Mason. The other intervenors have not joined in the appeal. It is only necessary, therefore, to revise the judgment in so far as to ascertain whether the errors complained of affect injuriously their rights. And first as to the intervenor and appellant Herndon. It is not pretended that he had any rights as against the plaintiff prior to the institution of this suit; nor indeed does it appear that he had acquired any right touching the matters in controversy prior to the judgment first rendered in this case. He claims the land in question by locations made during the pendency of the suit. And it would seem clear, on general principles, that he could not thus acquire a title to lands claimed by the plaintiff in the suit, which he could set up to defeat the plaintiff's claim of title as against the Government. His case would seem to rest on no higher or different grounds from that of a purchaser of property in litigation, from a defendant, *pendente lite;* who acquires no interest as against the title, whether legal or equitable, of the plaintiff in the suit. He is charged with constructive notice by the pendency of the suit, so as to render the interest he might have acquired by his purchase subject to abide its event. The sale, as against the plaintiff, is considered a nullity. (Briscoe v. Bronaugh, 1 Tex. R. 333; see Lee v. Salinas, *supra.*) The identical land now claimed by the appellant by locations made since the commencement of this suit, was claimed and sought to be recovered of the Government by the plaintiff in the suit. Can it be poubted that the Court had the power to adjudge it to him; or that the judgment would be binding upon one who purchased from the defendant during the pendency of the suit?

But it is insisted that the Court did not and ought not to decree to the plaintiff the land, because the title he had re-

ceived was defective and invalid.   And this brings in question the true and proper construction of the former judgment of this Court rendered in the case.

It will not, I apprehend, be now questioned, that the Court had the authority and power, under the law, to decide upon the question of right, and decree title to the plaintiff, as against the Government.   That question was authoritatively and finally settled by the former opinion and judgment of the Court in this, and other cases.   The only question, therefore, is as to what, in fact, was adjudged as to the right of the plaintiff in this regard.   And it certainly and clearly was adjudged that the plaintiff was "entitled to receive for his premium lands, "titles to fifteen leagues and twenty-three labors;" but having received titles to a greater number, "he is now entitled to the "first fifteen leagues in the consecutive order of the dates at "which the titles were issued."   And it cannot be doubted that this would have been the final judgment of the Court; confirming the plaintiff's title to these lands, and annulling it as to others, if it had not been apprehended that his right to some of them might be defeated by older and superior titles, or that the rights of purchasers from him might be prejudiced.   As between the plaintiff and the State, it was clearly adjudged that he was entitled to have confirmed to him the fifteen leagues and twenty-three labors thus designated by the decree.   These include the land claimed by the appellant, and it would seem quite too clear for controversy, that the plaintiff's right, under the decree, to take and have confirmed to him the title to these lands, cannot be defeated by locations subsequently made, or made during the pendency of the suit.

But, because the lands selected and claimed by the plaintiff are referred to in the decree, as lands "titled" or "deeded" to him, it is contended, it should not include those here in controversy, to which the titles had not been executed in due and legal form ; there being no first original or proctocol duly executed, but only a testimonio.   It, however, will be seen by

reference to the opinion of the Court, that the question was not as to the validity of the plaintiff' titles, or whether they had been duly executed ; but as to the amount of land to which he was entitled for the families introduced by him under his contract with the Government. The object of the suit was to ascertain what had been done by the plaintiff under his contract, in order to determine to what amount of premium lands he was equitably entitled. The question was as to the equitable rights of the plaintiff as against the Government. His right did not rest, in any degree, upon the fact of the issuance to him of titles, but solely on the acts done under and in the performance of his contract. He had no right in consideration of the lands granted, but only on the ground of his having introduced families. It was not material, nor was the question considered, whether his titles had been issued in due and legal form. They were regarded as selections, which he was entitled to make, previously to the introduction of the families, and before he could legally receive titles to the land from the Government. The decree required the District Court to confirm to the plaintiff titles to such of his selections as he might designate, under the privilege and with the restriction imposed; and to annul the remaining titles he had received. Whether any, or all of them, had been issued in due and legal form was, and is wholly immaterial. That was not a question between him and the Government; it was not a question which the Court was called upon, or thought proper to consider. It was enough that the confirmation of the titles by the Court would make them good and valid as against the Government, however executed ; and its judgment annulling them would destroy their validity if they had any ; and if not, it would be simply without effect, except to extinguish the plaintiff's claim and pretension of right under them. When it is considered that the execution of the titles was a matter so perfectly indifferent to the Government, and so entirely foreign to the questions at issue ; a matter which in no wise affected the

Herndon v. Robertson.

rights of the plaintiff as against the Government ; and that the Government had no interest in making that question ; can it be supposed that a third party could interfere, and acquire the right, by claiming the land as belonging to the Government, and thus make it a controlling question in the case, to defeat the plaintiff's claims ? What interest or right had such a party to interfere in the controversy, and make a question for the Government to defeat the plaintiff's title, which she had not made, and had no interest in making ? The Government had the right and capacity to prescribe upon what principles and by what tests she would permit the plaintiff to establish his right to the lands claimed. And when she had done so by the law under which the suit was permitted to be brought, can it be pretended that a third party having no interest in the litigation, had a right to come in and make himself a party to it, and prescribe other rules to which the plaintiff must conform to entitle him to maintain his suit against the Government ? Such a pretension, when duly considered, it would seem, would scarcely find an advocate. *Cujus est dare ejus est disponere*, is a maxim which is certainly applicable to such a case. Moreover, the very title now in question, was before the Court when the decree was rendered, and it appeared by the certificate of the Commissioner of the Land Office which introduced it, that the original in that office was not signed by the Commissioner issuing the title. The Court decreed with the title before it ; and the decree operated upon the title as between the plaintiff and the Government, investing the plaintiff with the right to designate and have confirmed to him this very title. There can be no question, therefore, of his right to it, under the decree, as between himself and the Government, or any one else, who had not acquired a prior title, or some equity, which gave him the right to interfere, for the protection of such title or equity ; which the appellant had not. He cannot be considered as a party aggrieved, or having a right to complain of the decree of the Court. And as to him, there clearly is no error in the judgment.

It remains to inquire whether there is error in the judgment as to the other appellant, Mason. And the determination of this inquiry also is entirely dependent upon the true construction of the former decree of this Court in the case.

The appellant had purchased from the plaintiff one of the titles issued to him for premium lands, before the institution of the suit; and, it appears, had paid the plaintiff value for it. This title the plaintiff, therefore, had appropriated to himself, by disposing of the land conveyed by it to a *bona fide* purchaser for value ; and had thus put it out of his power to surrender back the title to the Government to abide the judgment of the Court in this case. Having sold it and appropriated the proceeds, he had not the rightful control of the title ; and could not surrender it up to be cancelled. Nor could he ask its cancellation without a flagrant breach of duty and good faith towards his vendee. To devest the purchaser of his title, thus fairly acquired, thereby to confer a benefit upon the plaintiff ; or to permit the latter to benefit by the perpetration of such an outrage upon the rights of his vendee, would be an iniquity and injustice which it was not to be supposed the Government would intentionally sanction ; and which a Court of equity could never tolerate. The appellant's case was not then before the Court. But it was from an apprehension that there might be such cases of sales by the plaintiff of some of the lands to which he had obtained titles, and proceeding upon the maxim that he who seeks equity must do equity ; and, therefore, that relief should be refused the plaintiff, unless in taking the relief accorded to him, he would do justice to others ; that the Court proceeded in imposing the restriction upon the plaintiff's right to pretermit lands previously granted, that it should not attach to lands which had been " sold, alienated, or " otherwise disposed of by the deceased in his lifetime, or by " the appellee since his death." There can be no question that the appellant's case comes within the operation of the equitable maxim and principles upon which the Court decreed in favor of the plaintiff; and that his rights were as certainly in-

tended to be protected by the decree, as those of the plaintiff; in fine, that the plaintiff can take nothing by the decree in his favor, until he shall have done equity to those to whom it was due, by making his selections in such manner as to secure to them what he had conveyed and what good faith required him to secure to them.   Upon the principles of the decree, it would seem clear, that the appellant had the right which he claims, to have his land included in the plaintiff's selections, and his title protected.   But it was denied him, because his was "not in- " cluded within the first fifteen leagues and twenty-three labors " granted," (see Record, p. 143, 144,) although it cannot be denied, that his case comes clearly within the principles on which the Court proceeded to decree in favor of the plaintiff, and the spirit, intention and equity of the decree itself.   In this, we think, the Court erred.

The first fifteen leagues and twenty-three labors, or the earlier titles, were designated, not because they were deemed to possess any greater intrinsic virtue or validity than the others; or because they were deemed, in themselves, valid and the others invalid ; but it was considered more equitable to give the plaintiff his first selections ; that his equity would, perhaps, first attach to them; if he had alienated any of the lands, it was most likely these ; hence, if the fact were so, he was forbidden by the decree to pretermit them ; in fine, it was the natural and convenient order to be observed in making the designations.   But it cannot be doubted that the Court, if it had seen proper, might just as well have reversed the order, and required him to commence with the last in point of time, in making his designations of those he would have confirmed. As to any supposed right of his, arising from the intrinsic value of any of his titles, it is evident none such was recog- nized, by the decree : else he would have been confined to those, and would not have been allowed to pretermit any of them, and select others in their stead.   It was the natural order ; and it was deemed equitable, to permit and compel the

plaintiff to commence and proceed in making his selections in the order of the dates of his titles. But this order evidently was adopted more as a matter of convenience, to afford some certain and definite rule of procedure for the guidance of the party and the Court in making a final disposition of the case, than from any other consideration whatever. It surely cannot be supposed that it was intended to confer on the plaintiff a right, which would put it in his power, while receiving equity at the hands of the Court, to violate the first principles of equity and justice in respect to the rights of others. As was said by the Court, when this case was before us on a former appeal, "the mandate evidently intends, as far as possible, "consistently with equitable principles, that the appellee shall "be limited to the first fifteen leagues and twenty-three labors, "in the consecutive order of the dates of the titles." By thus limiting the right of selection of the appellee, it was not intended, as the case last cited also shows, to enlarge his rights, but to restrict them. It was not intended to permit him to select out of the whole number any he might choose ; but evidently to limit him to the first fifteen leagues and twenty-three labors, as nearly as practicable, "consistently with equitable principles ;" not for his exclusive benefit certainly ; but to prevent him from obtaining an undue advantage, by pretermitting the less valuable and selecting in their place the more valuable lands, without showing that he was equitably entitled to make the change, by proof of the facts, which, under the decree, conferred the privilege. This order of selection, it was said, was "to be violated only where the Empresario's "deed conflicts with a previously existing title ; and not then, "if the land had been disposed of by the intestate in his life "time, or his representatives since his death." How then can it be supposed, when the restriction was thus imposed and intended to prevent him from obtaining an unconscientious and unjust advantage, that he should be permitted to seize upon and make it the pretext for perpetrating the very wrong and in-

justice it was intended to prevent. If such a construction of the decree could prevail, it would be by a wide departure from those equitable principles, which have hitherto governed this Court in its adjudications upon the appellee's claims.— There was no one then before the Court in the condition of the present appellant ; and if it had not occurred to the mind of the Court, that there might be parties thus situated, and the decree had been silent upon the subject, when the appellant's case was afterwards presented, before a final decree, a Court of equity would have been bound to give him its protection ; and would refuse a final decree in favor of the plaintiff, unless he would do what equity so clearly demanded of him to do.— This Court did not decree directly upon the appellant's case ; for it was not before the Court ; but if it had been, can it be doubted that the rights of the party would have been protected ? All our ideas of the principles on which a Court of equity proceeds in granting relief and administering justice between parties would revolt at an opposite supposition. Any such supposition is repelled and concluded by the decree itself ; for in the anxious solicitude to prevent a possible injustice, a provision was introduced for the protection of purchasers from the plaintiff, though none were before the Court, nor could it be certainly known from the record that there were parties in that condition.

It is insisted that the appellant cannot complain of the judgment, because, it is said, he did not make proof, upon the trial, of his purchase. But to this it must be answered, that the fact of his purchase was not put in issue by the answer to his petition of intervention. His conveyance from the plaintiff was alleged, and made an exhibit to his petition ; and the answer of the appellee did not deny, but tacitly admitted it ; and there was, therefore, no necessity of proving its execution. Besides, the Court decreed against him, not upon the ground of any defect of proof ; but upon the other ground, that, not being embraced in the earlier titles, the plaintiff could not be compelled to include that of the appellant in his selections.

As the State has not appealed, or complained of the judgment, there is no occasion to revise it in other respects. We conclude, that, as to the appellant Mason, the judgment is erroneous and must be reversed : and as a Jury was waived and the case submitted to the Court, and the evidence is before us, so that we can render a judgment which will finally dispose of the case as to all the parties before the Court, such judgment will be he here rendered as the Court below ought to have rendered ; which is, that the judgment be affirmed as to the appellant Herndon ; and reversed as to the appellant Mason ; that the plaintiff be required to receive the league conveyed by him to the appellant as one of his selections ; and that his title to an equal quantity of land in his designation last in order, as confirmed by the judgment of the District Court, be cancelled and annulled ; and the judgment of the District Court be in all things else affirmed.

Ordered accordingly.